**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**FREDERICK J. NERONI,**

                **Plaintiff,**         **3:13-cv-1340**
                                **(GLS/DEP)**

        **v.**

**ELLEN L. COCCOMA et al.,**

                **Defendants.**

_____

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Frederick J. Neroni
Pro Se
203 Main Street
Delhi, NY 13753

**FOR THE DEFENDANTS:**
_Ellen L. Coccoma_, _Michael V._
_Coccoma_, _Robert Mulvey_, _A. Gail_
_Prudenti_, _Kevin Dowd_, _Eugene_
_Peckham_, _Karen Peters_, _Thomas_
_Mercure_, _Kelly Sanfilippo_
HON. ERIC T. SCHNEIDERMAN     BRUCE J. BOIVIN
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

_Hinman, Howard & Kattell, LLP_
Hinman, Howard Law Firm     JAMES S. GLEASON, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

*Levene, Gouldin and Thompson, LLP*,
*Margaret Fowler*
Hiscock, Barclay Law Firm                ROBERT A. BARRER, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff *pro se* Frederick J. Neroni commenced this action against

defendants[1] pursuant to 42 U.S.C. 1983, alleging violations of his Fourth,

Fifth, and Fourteenth Amendment rights, along with violations of the

Nobility Clause.[2]  (Compl., Dkt. No. 1.)  Pending are defendants' motions to

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

(Dkt. Nos. 29, 30, 44), and Neroni's cross motions for disqualification of the

court, to transfer venue, and to disqualify counsel,  (Dkt. Nos. 40, 47).  For

the reasons that follow, defendants' motions are granted, Neroni's cross

---

[1] Defendants include Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, and Kelly Sanfilippo (collectively, "Judicial Defendants"); Hinman, Howard & Kattell, LLP; and Levene, Gouldin and Thompson, LLP and Margaret Fowler (collectively, "LGT Defendants").

[2] *See* U.S. Const. art. I, § 9, cl. 8.

motions are denied, and Neroni's complaint is dismissed.

## II. <u>Background</u>[3]

This case presents yet another chapter in a barrage of lawsuits[4] filed by Neroni, a disbarred and disgruntled former attorney.[5]  In his lengthy and disjointed complaint, Neroni names as defendants a host of New York state judges, court officials, private attorneys, and private law firms, and weaves a tangled web of judicial corruption, political favoritism, and professional improprieties, resulting in a range of—barely decipherable—constitutional transgressions.  (*See generally* Compl.)

While difficult to discern, many of Neroni's claims tangentially relate to the circumstances surrounding his disbarment, (*id.* ¶¶ 8, 83-85, 140); others pertain to a New York state case, *Kilmer v. Moseman*, No. 2009-298, pending in Supreme Court in Delaware County before Justice Kevin

_____

[3] The facts are drawn from Neroni's complaint, and presented in the light most favorable to him.

[4] *See Neroni v. Zayas*, No. 3:13-CV-0127, 2014 WL 1311560 (N.D.N.Y. Mar. 31, 2014); *Neroni v. Grannis*, No. 3:11-CV-1485, 2013 WL 1183075 (N.D.N.Y. Mar. 21, 2013); *Bracci v. Becker*, No. 1:11-cv-1473, 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013); *Neroni v. Becker*, No. 3:12-cv-1226, 2012 WL 6681204 (N.D.N.Y. Dec. 21, 2012), *aff'd in part, vacated in part by* 2014 WL 657927 (2d Cir. Feb. 21, 2014).

[5] *See In re Neroni*, 86 A.D.3d 710 (3d Dep't 2011).

3

Dowd, in which Neroni's only involvement was receiving an order compelling him to appear for a deposition, (*id.* ¶¶ 18, 20, 34, 69, 86-95, 98-99). In an attempt to provide some clarity, below, the court addresses the relevant facts pertaining to, and the claims asserted against, each defendant.

## A.   <u>Ellen L. Coccoma</u>

Ellen Coccoma is an attorney in private practice at Hinman, Howard & Katell, LLP (HHK) and a former member of New York's Committee on Professional Standards (COPS). (*Id.* ¶¶ 8, 82.) Neroni alleges that, during her time as a member of COPS, Ellen Coccoma "participated in [the] investigation and decision-making" that led to his disbarment, (*id.*), and used certain, unspecified information gained from the investigation for "private gain," (*id.* ¶¶ 84-85). Neroni further alleges that, during her involvement in his disciplinary case, Ellen Coccoma "accepted a private case prosecuting [his] then corporation for fraud." (*Id.* ¶ 83.) Ellen Coccoma's actions, Neroni contends, resulted in a deprivation of his Fourteenth Amendment due process rights. (*Id.* ¶ 85.)

In addition to her involvement in Neroni's disciplinary action, Ellen Coccoma is also involved as a private attorney in *Kilmer*. (*Id.* ¶ 18.)

Neroni seems to allege that Ellen Coccoma exploited her relationship with her husband, Deputy Chief Administrative Judge Michael V. Coccoma, to obtain favorable treatment and avoid the imposition of sanctions in *Kilmer*. (*Id.* ¶¶ 18-19.)  Ellen Coccoma was also involved in procuring a court order requiring Neroni to provide deposition testimony in *Kilmer*, which, Neroni contends, violated his Fourth Amendment rights.  (*Id.* ¶¶ 18, 86, 92, 138.) Neroni seeks treble, actual, and punitive damages against Ellen Coccoma. (*Id.* ¶¶ 138, 147.)  He also seeks declaratory and injunctive relief, including a declaratory judgment that his disbarment is void.  (*Id.* ¶¶ 120, 140.)

**B.**   **HHK**

Neroni claims that HHK, a private law firm, acting in concert with its employee, Ellen Coccoma, "obtained by fraud . . . an order to involuntarily depose [Neroni]" in the *Kilmer* state court litigation, resulting in a violation of Neroni's Fourth Amendment rights.  (*Id.* ¶¶ 11, 92, 138.)  HHK, as Ellen Coccoma's employer, is also responsible, Neroni claims, for Ellen Coccoma's "fraudulent failure" to disclose to the parties and court in *Kilmer* that she was involved with Neroni's disciplinary case.  (*Id.* ¶ 138(c)(v).) Neroni seeks treble, actual, and punitive damages as against HHK.  (*Id.* ¶¶ 138, 147.)

**C.    Judge Coccoma**

As noted above, Judge Coccoma is the Deputy Chief Administrative

Judge for courts outside of New York City, and Ellen Coccoma's husband.

(*Id.* ¶¶ 14, 16.)  As the Chief Administrative Judge, he "controls [the]

assignment of judges in courts" in upstate New York.  (*Id.* ¶¶ 16-17.)

Neroni claims that Judge Coccoma "controlled and monitored" the

assignment of the justice to the *Kilmer* action, so that Ellen Coccoma could

obtain favorable treatment, including, among other things, avoiding

sanctions.[6]  (*Id.* ¶ 18.)  Additionally, at least briefly, Judge Coccoma

presided over *Mokay v. Mokay*, No. 2007-695, the New York Supreme

Court case in which Neroni was found to have committed a fraud upon the

court, and which ultimately led to his disbarment.  (*Id.* ¶¶ 8, 15); *see In re

Neroni*, 86 A.D.3d 710, 710-11 (3d Dep't 2011).

Neroni further claims that, pursuant to 22 N.Y.C.R.R. art. 122, a

retired Supreme Court justice may be appointed as a judicial hearing

officer.  (Compl. ¶ 22.)  Neroni states that judicial hearing officers have the

potential to earn up to $75,600 per year, which could "more than double a

---

[6] Neroni contends that Ellen and Judge Coccoma "have [a] common
budget," thus rendering sanctions imposed against Ellen Coccoma
adverse to both Ellen and Judge Coccoma's interests.  (Compl. ¶ 19.)

retired judge's income," and are appointed by the Deputy Chief Administrative Judge—in this case, Judge Coccoma. (*Id.* ¶¶ 22, 23, 25, 26, 28.) Because Judge Coccoma has this power, Neroni alleges, the justices have a financial interest in doing favors for him, such as providing Ellen Coccoma with special treatment in matters that are before them. (*Id.* ¶¶ 28, 40, 56-57, 61, 95, 97.) Neroni claims that this violates the Nobility Clause of the United States Constitution, because Ellen Coccoma, ostensibly, has been "elevated to the ranks of nobility." (*Id.* ¶¶ 97, 106, 143.) Neroni seeks declaratory relief. (*Id.* ¶ 141.)

## D.  **Justice Dowd**

Justice Dowd is a New York Supreme Court justice and was assigned to the *Kilmer* action by Judge Coccoma, after the previous judge—former New York Supreme Court Justice Eugene Peckham, also a defendant in this action—recused himself from the case. (Compl. ¶¶ 20, 34, 40, 41.) In *Kilmer*, Justice Dowd granted Ellen Coccoma's motion to compel and ordered Neroni to appear to provide deposition testimony, in violation of Neroni's Fourth Amendment and due process rights.[7] (*Id.*

---

[7] Although far from clear, it appears that Neroni alleges that his Fourth Amendment rights were violated because Justice Dowd lacked jurisdiction to issue the order compelling Neroni's deposition testimony

¶ 98.)  Neroni surmises that, because Justice Dowd is nearing retirement, and will soon be eligible to be appointed to the position of a judicial hearing officer, Justice Dowd has a financial stake in granting favors to Judge Coccoma.[8]  (*Id.* ¶¶ 28, 95, 97.)  Neroni seeks damages against Justice Dowd and an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a non-party witness sought to be subpoenaed.  (*Id.* ¶¶ 105, 134, 137.)

**E.  Judge Robert Mulvey**

Judge Mulvey is the Administrative Judge of the Sixth Judicial District, and is responsible for assigning cases within that district.  (*Id.* ¶¶ 36, 38.)  Judges Coccoma and Mulvey, acting together, "helped deprive [Neroni] of his rights by assigning [Justice] Dowd to the Kilmer action where sanctions were requested against [Judge] Coccoma's wife."  (*Id.* ¶¶ 40, 94.)  Neroni claims that, as Judge Coccoma's "subordinate," Judge Mulvey has

_____

because, after the death of a party, William Kilmer, Justice Dowd failed to "properly restor[e] jurisdiction."  (Compl. ¶¶ 18, 67, 68, 86, 92, 98, 100-105.)

[8] Other favors Justice Dowd allegedly provided to Ellen Coccoma include denying requests for sanctions against her and allowing her to have depositions in public buildings for private clients "at taxpayers, and [Neroni's], expense."  (Compl. ¶¶ 40, 93, 110, 113, 136.)

"a financial incentive to please" Judge Coccoma.  (*Id.* ¶¶ 39, 40.)

## F.    Former Justice Peckham

Justice Peckham is a former New York Supreme Court justice.  (*Id.* ¶ 41.)  Justice Peckham retired from his post in 2011, and has since joined the private law firm Levene Gouldin & Thompson (LGT)—perhaps not surprisingly, another defendant in this action.  (*Id.* ¶¶ 41-43, 63.)  Prior to his retirement, and before Justice Dowd was assigned, Justice Peckham presided over the *Kilmer* action.  (*Id.* ¶ 41.)

Additionally, after his retirement, Justice Peckham was appointed to the position of judicial hearing officer in Delaware County Supreme Court. (*Id.* ¶¶ 56-57, 61.)  Neroni claims that Justice Peckham's position as a judicial hearing officer, coupled with Judicial Defendants' failure to publicly post a list of judicial hearing officers, should disqualify his law firm, LGT, from all matters in Delaware County Supreme Court.  (*Id.* ¶¶ 57, 58, 64, 69, 70.)  Neroni seeks treble, actual, and punitive damages as against Justice Peckham. (*Id.* ¶¶ 138, 147.)

## G.    LGT Defendants

LGT is a private law firm in Binghamton, New York.  (*Id.* ¶ 44.)

Margaret Fowler is a partner in LGT; she also previously represented two

codefendants in the *Kilmer* action, and "supported" Ellen Coccoma's

motion to compel Neroni to provide deposition testimony.  (*Id.* ¶¶ 46, 65-

69.)  LGT and Fowler "failed to announce to the Kilmer court that [Justice]

Peckham, the previous judge on the Kilmer case, joined . . . LGT . . . as a

partner."  (*Id.* ¶ 64.)  LGT and Fowler's actions, Neroni claims, violated his

Fourth Amendment rights.  (*Id.* ¶ 69.)  Neroni seeks treble, actual, and

punitive damages as against LGT Defendants.  (*Id.* ¶¶ 138, 147.)

## H.  **Judge Gail A. Prudenti, Justices Karen Peters and Thomas Mercure, and Kelly Sanfilippo**

Neroni's claims against Chief Administrative Judge Prudenti, Justice

Peters, Presiding Justice[9] of the Appellate Division, Third Judicial

Department, Justice Mercure, former acting Presiding Justice[10] of the

Appellate Division, Third Judicial Department, and Kelly Sanfilippo, Court

---

[9] While Neroni captions Justice Peters' official position as "Chief Judge," (Compl.), she is, in fact, Presiding Justice.  The court will use her correct title.

[10] Again, Neroni captions Justice Mercure's official position as "former acting Chief Judge," (Compl.), when, in fact, he was the former acting Presiding Justice.  The court will use his correct title.

Clerk of Delaware County Supreme Court, boil down to the fact that they all had a duty to publicly disclose Justice Peckham's position as a judicial hearing officer, failed to do so, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter. (*See generally id.* ¶¶ 56-61.) As a result, Neroni's Fourth Amendment rights were violated when he was ordered to provide deposition testimony in *Kilmer*. (*Id.* ¶ 69.) Neroni seeks injunctive relief against Judge Prudenti and Justice Peters, essentially requiring them to publicly post the appointments of judicial hearing officers. (*Id.* ¶¶ 81, 142.)

### III. <u>Standard of Review</u>

The standards of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical," *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.*, 798 F. Supp. 2d 409, 410 (N.D.N.Y. 2011), and *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), respectively.

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's

submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of . . . particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

## IV. Discussion

Given that Neroni graduated from law school and spent over thirty years practicing law,[11] the court "will not grant him the leeway afforded to legal neophytes." *NMD Interactive, Inc. v. Chertok*, No. 11 Civ. 6011, 2013 WL 1385213, at *12 (S.D.N.Y. Mar. 18, 2013).

### A. Neroni's Motion For Disqualification of the Court

Neroni seeks the court's disqualification or recusal pursuant to 28 U.S.C. § 445. (Dkt. No. 47.) Neroni's motion is denied.

Neroni seeks the court's recusal based on several statutory

---

[11] Neroni is a graduate of Albany Law School and was admitted to the New York State Bar in 1974. *See Zayas*, 2014 WL 1311560, at *1. He was disbarred on July 7, 2011. *See id.*; *In re Neroni*, 86 A.D.3d at 711.

provisions.[12]  (Dkt. No. 40, Attach. 1 at 1-9.)  As relevant here, recusal is

appropriate under § 455(a) when a judge's "impartiality might reasonably

be questioned."  28 U.S.C. § 455(a).  Section 455(b)(1) provides for recusal

when a judge "has a personal bias or prejudice concerning a party."  *Id.* §

455(b)(1).  Section 455(b)(3) also mandates recusal when "[the judge] has

served in governmental employment and in such capacity participated as

counsel . . . concerning the proceeding or expressed an opinion concerning

the merits of the particular case in controversy."  *Id.* § 455(b)(3).  And

finally, recusal is appropriate under § 455(b)(5)(ii) when "a person within

the third degree of relationship to [the judge] . . . [i]s acting as a lawyer in

the proceeding."  *Id.* § 455(b)(5)(ii).

A recusal decision rests within the sound discretion of the judge

whose recusal is sought.  *See United States v. Lovaglia*, 954 F.2d 811,

815 (2d Cir. 1992).  The standard for recusal is whether "a reasonable

---

[12] Reasserting previously-made arguments, Neroni also claims that recusal is mandated "as a matter of due process of law."  (Dkt. No. 40, Attach. 1 at 7-9.)  "Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.'" *United States v. Basciano*, 384 F. App'x 28, 32 (2d Cir. 2010) (quoting 28 U.S.C. § 455(a)).  Because this inquiry is identical to that considered under § 455(a), (*id.*), the court need not separately address Neroni's due process argument.

13

person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id.* (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F. Supp. 196, 202 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992).

First, Neroni contends that, based on prior adverse rulings, including sanctions, of this court against him, recusal is mandatory under §§ 455(a) and (b)(2). (Dkt. No. 40, Attach. 1 at 1-4.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney,* 645 F.3d 519, 520-21 (2d Cir. 2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or

of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

Second, Neroni contends that recusal is necessary under § 455(b)(3) because the court was involved with a criminal prosecution against Neroni in 1982, which was mentioned in his order of disbarment. (Dkt. No. 40, Attach. 1 at 4.)  All that Neroni claims, however, is that at the time of the criminal prosecution, the court was "part of the prosecuting office." (*Id.*)  Neroni does not claim, as § 455(b)(3) contemplates, that the court was actually involved in the prosecution.  *See Maunsell v. WCAX TV*, 477 F. App'x 845, 846 (2d Cir. 2012).  Moreover, 28 U.S.C § 455(b)(3) mandates recusal where the judge, while serving in government employment, participated in a material way "concerning the proceeding" or "expressed an opinion concerning the merits of *the particular case in controversy*." (emphasis added).  Accordingly, even if the court was involved with Neroni's criminal prosecution, it has nothing to do with the merits of this proceeding.  Neroni's argument suggests precisely the sort of "remote, contingent, indirect or speculative interests" that militate against recusal.  *Lovaglia*, 954 F.2d at 815.

Third, Neroni argues that recusal is appropriate under § 455(b)(5)(ii) because "Judge Sharpe's son Michael A. Sharpe is employed as an Assistant Attorney General in the office that" represents Judicial Defendants. (Dkt. No. 40, Attach. 1 at 5-7.) As LGT Defendants point out, however, this is a civil matter, and Sharpe has: (1) not appeared in this action; and (2) serves as an Assistant Deputy Attorney General in the Organized Crime Task Force, and, as such, has no involvement in this matter, as he investigates and prosecutes criminal matters. (Dkt. No. 41 at 3-4.) Under these circumstances, recusal is not warranted. *See, e.g., Microsoft Corp. v. United States*, 530 U.S. 1301, 1301-03 (2000) (statement of Chief Justice Rehnquist explaining his decision not to recuse himself in a case in which his son was a partner at a law firm representing a party before the Court); *Faith Temple Church v. Town of Brighton*, 348 F. Supp. 2d 18, 21 (W.D.N.Y. 2004) (holding that recusal was not required where the judge's son had been hired by a law firm that was representing a party in the action).

As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir.

2001).  Accordingly, Neroni's motion for recusal or disqualification of the court is denied.

Below, the court addresses the relevant arguments advanced by defendants in support of their motions to dismiss, Neroni's responses in opposition, and, finally, Neroni's remaining cross motions.

## B.   **Judicial Immunity**

First, Judicial Defendants argue that the claims against Judges Coccoma, Mulvey, and Prudenti, and Justices Dowd, Peckham, Peters, and Mercure must be dismissed because they are entitled to absolute judicial immunity.  (Dkt. No. 44, Attach. 2 at 6-9.)  Neroni counters that judicial immunity does not apply.  (Dkt. No. 47, Attach. 2 at 2-7.)  The court agrees that Judges Coccoma and Mulvey and Justice Dowd are immune from suit in their individual capacities.[13]  Further, while Judge Prudenti and Justices Peckham, Peters, and Mercure are not entitled to absolute

---

[13] Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities.  *See Martinez v. Queens Cnty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011).  As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities.  *Martinez*, 2014 WL 1011054, at *8 n.8.

judicial immunity, Neroni fails to state a claim against them.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 bar injunctive relief, unless a declaratory decree was violated or declaratory relief was unavailable. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties,

i.e., whether they dealt with the judge in his judicial capacity." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

### 1. Judges Coccoma and Mulvey

The gravamen of Neroni's claims against Judges Coccoma and Mulvey is that they manipulated the assignment of judges so that Ellen Coccoma could obtain favorable treatment. (Compl. ¶¶ 18, 40, 94.) Citing no authority, Neroni argues that these actions are outside the scope of judicial immunity. (Dkt. No. 47, Attach. 2 at 2-4.)

Contrary to Neroni's unfounded assertions, courts have held that the assignment of cases is a judicial function and is therefore a protected act under judicial immunity. *See Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985) ("Although it is an 'administrative' act, in the sense that it does not concern the decision who shall win a case, the assignment of cases is still a judicial function in the sense that it directly concerns the case-deciding process."), *vacated on other grounds sub nom. Tyus v. Martinez*, 475 U.S. 1138 (1986); *Parent v. New York*, 786 F. Supp. 2d 516,

532 (N.D.N.Y. 2011) ("The assignment of cases and issuance of consolidation orders are judicial functions."), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *see also Zahl v. Kosovsky*, No. 08 Civ. 8308, 2011 WL 779784, at *9 (S.D.N.Y. Mar. 3, 2011) (holding that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

Accordingly, Judges Coccoma and Mulvey's judicial assignment decisions are clearly judicial functions. As such, Judges Coccoma and Mulvey are entitled to judicial immunity, and the claims asserted against them in their individual capacities are dismissed.

2. *Justice Dowd*

Although Neroni makes numerous factual allegations against Justice Dowd, they generally concern his rulings and actions in *Kilmer*, particularly his ruling on Ellen Coccoma's motion to compel, which ordered Neroni to provide deposition testimony. (Compl. ¶¶ 40, 98, 99, 101-08.) Neroni also complains of Justice Dowd's failure to impose sanctions on Ellen Coccoma, due to improper financial and political motives, and his

acquiescence to her rent-free use of public buildings.[14]  (*Id.* ¶¶ 28, 40, 93, 94, 97, 98, 110, 113, 136.)

Issuing orders compelling parties or nonparties to provide deposition testimony and deciding whether to impose sanctions are actions well within Justice Dowd's judicial capacity, and are also well within his jurisdiction.[15]  *See Chandler v. Suntag*, No. 1:11-cv-02, 2011 WL 2559878, at *3 (D. Vt. June 28, 2011) ("Each of these alleged activities—considering complaints, facilitating subpoenas, and permitting certain forms of discovery—involve fundamental judicial functions, and are protected from liability by absolute judicial immunity." (citing *Mireles*, 502 U.S. at 11)); *Kapsis v. Brandveen*, No. 09-01352, 2009 WL 2182609, at *2 (E.D.N.Y.

---

[14] Neroni also attacks Justice Dowd's mental capacity and claims that he has "mental health problems that appear to make him unfit to make decisions from the bench which are changing lives and affecting constitutional rights of individuals."  (Compl. ¶¶ 121-30.)

[15] In his opposition, Neroni contends that judicial immunity should not apply to Justice Dowd because Neroni has "alleged enough to be entitled to prospective injunctive relief under *Ex Parte Young*."  (Dkt. No. 47, Attach. 2 at 4.)  Neroni confuses judicial immunity with Eleventh Amendment immunity, which is addressed below.  As discussed above, while judicial immunity does not bar injunctive relief if a declaratory decree was violated or declaratory relief was unavailable, Neroni has not alleged that Justice Dowd violated a declaratory decree or that declaratory relief was unavailable. *See Montero*, 171 F.3d at 761.

July 20, 2009) (noting that judicial immunity protects judges' decisions regarding whether to impose sanctions).  Thus, Justice Dowd is immune from suit in his individual capacity.

> 3.    *Judge Prudenti and Justices Peckham, Peters, and Mercure*

The essence of Neroni's claims against Judge Prudenti and Justices Peters, Peckham, and Mercure is that they all failed to publicly disclose Justice Peckham's position as a judicial hearing officer, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter, which violated Neroni's Forth Amendment rights.  (Compl. ¶¶ 56-61, 69.)

Neroni claims the judges' failure to "post names of judicial hearing officers prominently where the public could see" was not judicial, but administrative.  (Dkt. No. 47, Attach. 2 at 6-7.)  While the court agrees that posting names of judicial hearing officers is properly characterized as administrative, thus putting these omissions outside of the scope of judicial immunity, Neroni's claims against these defendants nevertheless fail because he has failed to state a cognizable federal claim.  *See Morris v. Katz*, No. 11-CV-3556, 2011 WL 3918965, at *3 (E.D.N.Y. Sept. 4, 2011) (holding that the Chief Administrative Judge was not entitled to absolute immunity for administrative acts, but plaintiff, in any event, failed to state a

claim); *Collins v. Lippman*, No. 04-CV-3215, 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (noting that the Chief Administrative Judge's alleged failure to direct clerk to provide the plaintiff with copies of documents he requested was "beyond the scope of judicial immunity").

Although these defendants are not entitled to judicial immunity, Neroni has failed to state a claim. "[F]or a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions." *Porath v. Bird*, No. 9:11–cv–963, 2013 WL 2418253, at *23 (N.D.N.Y. June 3, 2013). As an initial matter, aside from receiving an order compelling him to appear for a deposition in *Kilmer*—which, by his own admission, he did not attend, (Dkt. No. 47, Attach. 2 at 6)—Neroni has failed to allege what injury, if any, he suffered as a result of defendants' failure to post the names of judicial hearing officers. Moreover, while Neroni contends that defendants' failure to post the names of judicial hearing officers caused a Fourth Amendment violation when he was compelled to provide deposition testimony in an action in which a judicial hearing officer's private law firm was representing a private party, (Dkt. No. 47, Attach. 1 at 7), this attempt to articulate

causation is attenuated at best.

Further, aside from his bald, conclusory assertions, Neroni has cited no authority indicating that these judges were under a duty to post the names of judicial hearing officers. An "omission can. . . only amount to an actionable claim under § 1983 if [defendants were] under a constitutional obligation." *Zigmund v. Wynne*, 189 F.3d 462, 1999 WL 642951, at *2 (2d Cir. 1999); *see N.Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior*, 341 F.3d 112, 117 (2d Cir. 2003) (noting that failure to act may constitute a § 1983 violation only where the plaintiff identifies a duty); *see also Morris*, 2011 WL 3918965, at *3. Accordingly, all claims asserted against Judge Prudenti and Justices Peckham, Peters, and Mercure regarding their failure to post or disclose the names of judicial hearing officers are dismissed.

## C.   <u>Quasi-Judicial Immunity</u>

Judicial Defendants also argue that, to the extent that Neroni asserts any claims against Ellen Coccoma in her capacity as a member of COPS, she is entitled to quasi-judicial immunity. (Dkt. No. 44, Attach. 2 at 11-12.) The court agrees.

It is well settled that quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell*, 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)).

Members of COPS are entitled to quasi-judicial immunity for conduct performed "within the course of their duties." *Koziol v. Peters*, No. 12-CV-823, 2012 WL 4854589, at *8 (N.D.N.Y. Oct. 11, 2012) (holding that three members of the Third Department COPS were protected by quasi-judicial immunity for their conduct in the course of an investigation); *see Anonymous v. Ass'n of the Bar of N.Y.*, 515 F.2d 427, 433 (2d Cir. 1975) (observing that New York state courts regard disciplinary proceedings as "judicial proceeding[s]" and determining that the state bar association's grievance committee acted as a quasi-judicial body and an arm of the Appellate Division); *accord McKeown v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010). Accordingly, any claims

against Ellen Coccoma relating to her conduct as a member of COPS, including her investigation and prosecution of Neroni's disciplinary action, must be dismissed because she is entitled to quasi-judicial immunity.

## D.   Eleventh Amendment Immunity

Judicial Defendants argue that Neroni's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment.[16]  (Dkt. No. 44, Attach. 2 at 14-17.)  The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit.  *See V.A. Office for Prot.  Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (citation omitted).  "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638.  Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir.

---

[16] Neroni contends that the Eleventh Amendment does not bar claims of citizens against their own states.  (Dkt. No. 47, Attach. 2 at 8, 15.)  This same, baseless argument, offered by Neroni himself, was recently considered and rejected by a court in this District.  *Bracci*, 2013 WL 123810, at *9 n.5.  Accordingly, the court declines to entertain this obviously meritless argument again here.

2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities).

Under the doctrine established in *Ex Parte Young*, however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (internal quotation marks and citation omitted). Nevertheless, declaratory relief, while equitable in nature, is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Kent v. New York*, No. 1:11-CV-1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation marks and citation omitted).

### 1. *Monetary and Non-Prospective Declaratory or Injunctive Relief*

Here, to the extent that Neroni's complaint seeks monetary relief and/or non-prospective injunctive or declaratory relief against Judicial Defendants in their official capacities, they are immune from suit pursuant

to the Eleventh Amendment.  This includes: (1) as against Ellen Coccoma acting in her capacity as a member of COPS, Neroni's request for (a) treble damages, (Compl. ¶¶ 138, 147), and (b) a declaratory judgment that his disbarment is void, (*id.* ¶ 140), as it is properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger Corp. v. McDonald*, No. 12 Civ. 2731, 2013 WL 5434618, at *13 (S.D.N.Y. Sept. 26, 2013); (2) as against Judge Coccoma, Neroni's request for "a declaratory judgment that Ellen Coccoma's participation in the disciplinary action against [him] . . . where [Judge] Coccoma recused [himself] from the related case involving [Neroni] . . . constituted re-entry of [Judge] Coccoma into the Mokay case through his wife and a violation of [Neroni's] due process," (Compl. ¶ 141), as it is also properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger*, 2013 WL 5434618, at *13; (3) as against Justice Dowd, Neroni's request for money damages; and (4) all claims against Justice Mercure, Judge Mulvey, Justice Peckham, and Sanfilippo,[17] as Neroni has not requested prospective injunctive relief as

---

[17] For the first time, in his opposition to Judicial Defendants' motion to dismiss, Neroni claims that he seeks prospective injunctive relief against Sanfilippo.  (Dkt. No. 47, Attach. 2 at 7-8.)  Even if he properly stated so in his complaint, Neroni would be unable to circumvent Eleventh Amendment immunity because, as discussed *infra* Part IV.D.2, he has

against any of these Judicial Defendants in his complaint.

   2.   *Prospective Injunctive Relief*

Neroni seeks prospective injunctive relief against Justice Dowd, Judge Prudenti, and Justice Peters.  Specifically, as against Justice Dowd, Neroni seeks an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a nonparty witness sought to be subpoenaed.  (Compl. ¶¶ 134, 137.)  As against Judge Prudenti, Neroni seeks injunctive relief "requiring her to promptly forward orders of appointment of judicial hearing officers to the County and Court clerks of the respective counties, as well as to the Court Clerks of the Appellate Divisions . . . and to post the names of appointed hearing officers on the website of the Unified New York Court system."  (Compl. ¶ 81.)  Similarly, as against Justice Peters, Neroni seeks an injunction "ordering her to post all orders of appointment of all judicial hearing officers and of all members of . . . [COPS] of her court going back [forty-five] years on her website."  (*Id.* ¶ 142.)  Because, as discussed *supra* Part IV.B.3, Neroni fails to state a claim against these defendants regarding their failure to post the names of judicial hearing officers, a discussion of

_____

 failed to allege an ongoing violation of federal law.

whether Neroni's requested relief related to these claims fits within the *Ex Parte Young* exception is academic.[18]

## E.     State Action

HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham contend that any claims that Neroni asserts against them in their capacities as private attorneys or law firms must be dismissed for lack of state action. (Dkt. No. 29, Attach. 2 at 4-8; Dkt. No. 30, Attach. 3 at 6-8;

---

[18] The court notes, however, that even if Neroni did state a claim, Neroni's requested relief does not fit within the *Ex Parte Young* exception. "Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a straightforward inquiry that asks whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (internal quotation marks and citations omitted). Here, while the relief Neroni requests is prospective in nature, he has failed to allege that this relief will remedy an *ongoing* violation of federal law. *Clark*, 510 F. App'x at 51; *McKeown*, 377 F. App'x at 123. The sole bases for Neroni's requested relief are that Justice Dowd violated Neroni's Fourth Amendment rights by ordering him to provide deposition testimony in *Kilmer*, and that Justice Peters and Judge Prudenti violated his Fourth Amendment rights by failing to publicly disclose the list of judicial hearing officers, thus allowing LGT to continue to represent private parties in *Kilmer* while Justice Peckham was a judicial hearing officer. (Compl. ¶¶ 56-61, 98.) Because Neroni has alleged only discrete, past acts or omissions, not an ongoing violation of federal law, Justice Peters, Justice Dowd, and Judge Prudenti are also entitled to Eleventh Amendment sovereign immunity and dismissal of any claims asserted against them in their official capacities.

Dkt. No. 44, Attach. 2 at 9-12.)  Neroni retorts that he sufficiently alleged

that all private conduct rose to the level of state action by way of

conspiracy.  (Dkt. No. 40, Attach. 2 at 2-4; Dkt. No. 40, Attach. 3 at 2-6;

Dkt. No. 47, Attach. 2 at 18-20.)  The court agrees with defendants that

dismissal is required.

"In order to state a claim under § 1983, a plaintiff must allege that he

was injured by either a state actor or a private party acting under color of

state law."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir.

2002) (citation omitted).  In order to prove a § 1983 conspiracy claim, a

plaintiff must allege: "(1) an agreement between a state actor and a private

party; (2) to act in concert to inflict an unconstitutional injury; and (3) an

overt act done in furtherance of that goal causing damages."  *Id.* at 324-

25.  However, "[a] merely conclusory allegation that a private [individual]

acted in concert with a state actor does not suffice to state a § 1983 claim

against the private [individual]."  *Id.* at 324 (citation omitted).  Instead, a

plaintiff must show "a sufficiently close nexus between the State and the

challenged action of the [private] entity so that the action of the latter may

be fairly treated as that of the State itself."  *Jackson v. Metro. Edison Co.*,

419 U.S. 345, 351 (1974) (internal quotation marks and citation omitted).

31

Here, despite his vehement contentions to the contrary, Neroni has failed to establish that any of the private law firms or attorneys were state actors for § 1983 purposes.  As an initial matter, it is black letter law that "[p]rivate law firms and attorneys . . . are not state actors for section 1983 purposes."  *Jaffer v. Patterson*, No. 93 Civ. 3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 419 (S.D.N.Y. 2004) ("Private attorneys and law firms . . . do not act under color of state authority.")  Furthermore, it is equally well settled that mere use, and even misuse, of the state courts does not turn private parties into state actors.  *See Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983." (internal quotation marks and citation omitted)); *Dahlberg v. Becker*, 748 F.2d 85, 92-93 (2d Cir. 1984) (dismissing § 1983 action against private attorney because allegations of "misuse of a state statute" did not give rise to a § 1983 action); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*, No. 10 CV 5298, 2012 WL 1118194, at *8 (E.D.N.Y. Mar. 30, 2012) (holding that the issuance of and

compliance with a subpoena did not transform defendants into state actors).

The genesis of Neroni's claims against these defendants is that Ellen Coccoma, a private attorney, avoided the imposition of sanctions, and filed a motion to compel Neroni's deposition testimony in *Kilmer*, which Justice Dowd granted solely as a favor to Judge Coccoma, resulting in a violation of Neroni's Fourth and Fourteenth Amendment rights. (Compl. ¶¶ 18, 19, 86, 91, 92, 98.)  Because Ellen Coccoma is an employee of HHK, Neroni argues, HHK and Ellen Coccoma "were the same legal person."  (Dkt. No. 40, Attach. 2 at 3.)  Further, because LGT Defendants "supported" Ellen Coccoma's motion in *Kilmer*, and because Justice Peckham, an LGT partner, was also a judicial hearing officer, LGT Defendants and Justice Peckham were part of the conspiracy to violate Neroni's Fourth Amendment rights.  (Compl. ¶¶ 65, 67, 69, 99, 114, 138(c).)  At best, however, Neroni has alleged misuse of state court procedures, which, as discussed above, does not morph private action into state action.  Neroni even admits that "Ellen Coccoma and [Justice] Peckham were sued predominantly for their conduct as private attorneys." (Dkt. No. 47, Attach. 2 at 22.)

Further, Neroni also has not alleged facts demonstrating a "meeting of the minds," *Dahlberg*, 748 F.2d at 93, an agreement between private parties to deprive him of his constitutional rights, *Ciambriello*, 292 F.3d at 323, or a "a sufficiently close nexus between the State" and the actions of the private attorneys and law firms, *Jackson*, 419 U.S. at 351.  Instead, Neroni conclusorily contends that judges nearing retirement, such as Justice Dowd, are financially motivated to provide Ellen Coccoma with special treatment in matters that come before them so that Judge Coccoma is incentivized to appoint these judges to judicial hearing officer positions upon their retirement.  (Compl. ¶¶ 28, 40, 56-57, 61, 95, 97.)  Such far-removed and unfounded speculation does not a conspiracy make.  *See Delbene v. Alesio*, No. 00 Civ. 7441, 2001 WL 170801, at *10 (S.D.N.Y. Feb. 21, 2001) (holding that private attorneys' coordination of deposition with county attorney allegedly in violation of the plaintiff's First Amendment rights did not give rise to a conspiracy and did not elevate the private attorney to a state actor).  Accordingly, Neroni's § 1983 claims against HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham are dismissed.

**F.    State Law Claims**

Defendants contend that, to the extent that Neroni asserts state law claims against them, the court should decline to exercise supplemental jurisdiction.  (Dkt. No. 29, Attach. 2 at 9-19; Dkt. No. 44, Attach. 2 at 19-20.)  While no state law causes of action are readily apparent on the face of the complaint, to the extent that Neroni asserts state law claims, the court agrees that they must be dismissed.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion."  *Butler v. LaBarge*, No. 9:09-CV-1106, 2010 WL 39077258, at *3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)).  Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal.  *Kolari*, 455 F.3d at 122.  Accordingly, the court declines to exercise jurisdiction over any state law claims and they are dismissed from this action.

## G. Leave to Amend

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013).  As an initial matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Neroni any special solicitude.  Moreover, Neroni has not requested leave to amend in any of his submissions.  And in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Neroni's complaint is dismissed with prejudice.

## H. Costs and Attorneys' Fees

In requesting dismissal of Neroni's claims, HHK and LGT Defendants seek costs and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 1927.  (Dkt. No. 29, Attach. 2 at 10-12; Dkt. No. 30, Attach. 3 at 16-20.)  Because defendants did not provide any

documentation upon which the court could quantify costs or attorneys' fees, however, this request is denied with leave to renew.[19]

## I.   **Neroni's Remaining Cross Motions**

### 1.   *Transfer of Venue*

Providing no authority or analysis, Neroni requests a transfer of venue "to a court where the Chief Judge does not have relatives working in the office of New York State Attorney General."  (Dkt. No. 40 at 1.) Neroni's motion is denied.

Section 1404(a) of Title 28 of the United States Code authorizes a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The decision to transfer venue is entrusted to the sound discretion of the trial court,  *see Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989) (citations omitted), and the party seeking transfer bears the burden of proof,  *see Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 449 (N.D.N.Y. 2007).  Because venue is proper in this district, and Neroni

---

[19]  Notably, while Neroni argues against the imposition of sanctions, (Dkt. No. 40, Attach. 2 at 15-16; Dkt. No. 40, Attach. 3 at 9-10), no Rule 11 motion is presently before the court.

has not demonstrated that transfer is warranted, Neroni's motion to transfer venue is denied.

### 2. Disqualification of Counsel

Finally, Neroni moves to disqualify the New York State Office of the Attorney General (OAG) from representing Ellen Coccoma and Justice Peckham against Neroni's claims related to the conduct of these defendants solely in their private capacity, to strike any filings made by OAG on their behalf, and to sanction the Attorney General and Assistant Attorney General.[20]  (Dkt. No. 47; Dkt. No. 47, Attach. 2 at 22-23.)  Judicial Defendants oppose Neroni's motion.  (Dkt. No. 53 at 2-3.)  For the reasons discussed below, Neroni's motion is denied.

Motions to disqualify counsel "are subject to fairly strict scrutiny" and "the courts must guard against tactical use of motions to disqualify counsel."  *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).  A district court may "disqualify counsel where necessary to preserve the integrity of

---

[20] As an initial matter, it is unclear that Neroni has standing to object to the representation of Ellen Coccoma and Justice Peckham by the Attorney General, as he "has failed to demonstrate that he has been aggrieved in any way different in kind and degree from the community generally by the Attorney General's representation" of these defendants. *Zaccaro v. Parker*, 169 Misc. 2d 266, 269 (N.Y. Sup. Ct. 1996).

the adversary process," typically in the following situations: (1) where an attorney's conflict of interests in violation of New York's Rules of Professional Conduct "undermines the court's confidence in the vigor of the attorney's representation of his client"; or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . giving his present client an unfair advantage." *Bd. of Educ. of N.Y.C. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations omitted); *see Grant v. Harvey*, No. 09 Civ. 1918, 2012 WL 1958878, at *1 (S.D.N.Y. May 24, 2012).

Further, New York Public Officers Law § 17(2) states, in relevant part:

> the state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties.

Judicial Defendants contend, and the court agrees, that the complaint raises allegations that certain conduct by both Ellen Coccoma and Justice Peckham, while acting within the scope of their public employment and duties, injured Neroni. (Dkt. No. 53 at 2-3; Compl. ¶¶ 8, 41, 82, 84-85.)

Indeed, the caption of the complaint, which, in addition to their individual capacities, names Ellen Coccoma as a defendant "as a former member of the Committee for Professional Conduct, Appellate Division, Third Judicial Department," and names Justice Peckham as a defendant "as the former Acting Supreme Court Justice assigned to the Delaware County Supreme Court case Kilmer v. Moseman, Delaware County Index No. 2009-298, and as a judicial hearing officer in Delaware County Supreme Court." (Compl.)

Because Neroni alleged in the complaint that at least some of the events giving rise to this action occurred while defendants were acting within the scope of their employment with the state, Ellen Coccoma and Justice Peckham are entitled to be represented by OAG unless the Attorney General determines that representation is inappropriate. *See* N.Y. Pub. Off. Law § 17(2); *Grant*, 2012 WL 1958878, at *2. Here, no such determination was made. Further, Neroni does not claim any violation of New York's Rules of Professional Conduct that would undermine the court's confidence in the vigor of the Attorney General's representation of his clients, and he does not claim that a conflict of

interest exists. Accordingly, there is no basis on which to grant Neroni's

motion, and it is therefore denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt. Nos. 29, 30,

44) are **GRANTED**; and it is further

**ORDERED** that Neroni's cross motions for disqualification or recusal

of the court, transfer of venue, and disqualification of counsel (Dkt. Nos.

40, 47) are **DENIED**; and it is further

**ORDERED** that Neroni's complaint (Dkt. No. 1) is **DISMISSED**; and

it is further

**ORDERED** the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court