**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FREDERICK J. NERONI,**

                Plaintiff,                        3:13-cv-1340
                                                                              (GLS/DEP)

          v.

**ELLEN L. COCCOMA et al.,**

                Defendants.
_____

**APPEARANCES:**                             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Frederick J. Neroni
Pro Se
203 Main Street
Delhi, NY 13753

**FOR THE DEFENDANTS:**
*Hinman, Howard & Kattell, LLP*
Hinman, Howard Law Firm             JAMES S. GLEASON, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

*Levene, Gouldin and Thompson, LLP,*
*Margaret Fowler*
Hiscock, Barclay Law Firm               ROBERT A. BARRER, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

**Gary L. Sharpe**
**Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### I. **Introduction**[1]

Plaintiff *pro se* Frederick J. Neroni commenced this action against, among others, defendants Hinman, Howard & Kattell, LLP (HHK), Levene, Gouldin and Thompson, LLP, and Margaret Fowler, (Levene, Gouldin and Thompson, LLP and Fowler are collectively referred to as LGT),[2] pursuant to 42 U.S.C. 1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. (Compl., Dkt. No. 1.) Pending are HHK and LGT's motions for costs and attorneys' fees. (Dkt. Nos. 62, 63.) HHK seeks costs and fees in the amount of $10,502, and LGT seeks costs and fees in the amount of $5,967.50. (Dkt. No. 62, Attach. 1 at 2; Dkt. No. 63, Attach. 1 at 2.) For the reasons that follow, the motions are granted.

### II. **Background**

On December 4, 2013, defendants moved to dismiss Neroni's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and also requested

---

[1] Although Neroni filed a Notice of Appeal, (Dkt. No. 73), the court maintains residual jurisdiction over collateral matters such as attorneys' fees and costs. *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004).

[2] Although not relevant to this motion, Neroni also named as defendants several current and former state court judges and officials, including Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, and Kelly Sanfilippo. (*See generally* Compl., Dkt. No. 1.)

2

attorneys' fees. (Dkt. Nos. 29, 30.) In a June 5, 2014 Memorandum-Decision and Order, the court granted defendants' motions to dismiss, but denied defendants' request for attorneys' fees and costs, with leave to renew.[3] (Dkt. No. 59)

### III. Legal Standard

Generally, the so-called "American Rule" mandates "each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *See Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). "Notwithstanding the American Rule, however, [the Supreme Court has] long recognized that federal courts have inherent power to award attorney's fees in a narrow set of circumstances, including when a party brings an action in bad faith." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013).

In addition to the court's inherent power, Congress has enacted fee shifting provisions which permit a prevailing party to recoup costs in certain types of cases. *See Fox*, 131 S. Ct. at 2213 (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). To this end, 42 U.S.C. § 1988(b) authorizes

---

[3] Familiarity with the underlying facts, Neroni's claims, and the court's June 5, 2014 Memorandum-Decision and Order is presumed.

courts to award "a reasonable attorney's fee as part of the costs" to the prevailing party in any action brought under § 1983. Although available to both parties, attorneys' fees may only be awarded to a defendant if either the entirety, or a part, of the "plaintiff's action was frivolous, unreasonable, or without foundation." *Fox*, 131 S. Ct. at 2213 (internal quotation marks and citations omitted). In making this determination, and thereafter calculating the reasonable fee, trial courts are granted "substantial deference." *Id.* at 2216. "[R]ough justice," and not "auditing perfection," is the goal of the fee shifting provision. *Id.* Thus, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*[4]

## IV. Discussion

Neroni raises several arguments opposing defendants' motions, most of which relate to the court's authority to impose fees and the

---

[4] The court notes that, in addition to 42 U.S.C. § 1988, "which shifts attorneys' fees from one party to another," *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), 28 U.S.C. § 1927 provides that, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Although the Second Circuit has held that § 1927 is not applicable to non-lawyers, *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992), it is unclear whether that is still the rule in this Circuit, *see Davey v. Dolan*, 292 F. App'x 127, 128 (2d Cir. 2008) (affirming district court's imposition of sanctions on *pro se*, non-attorney plaintiff pursuant to § 1927). This question, however, is of no moment, as the court is authorized to award attorneys' fees pursuant to § 1988 and its inherent power. *See* 42 U.S.C. § 1988(b); *Marx*, 133 S. Ct. at 1175.

reasonableness of the fees themselves. (*See generally* Dkt. Nos. 69, 71.) After a thorough review of the record, the court concludes that all of Neroni's arguments are unpersuasive and warrant little discussion. In fact, in determining whether Neroni has proceeded with this litigation in bad faith, as the court must, it need look no further than the assertions made in Neroni's most recent submissions. Indeed, the arguments adduced in Neroni's briefs epitomize, and may even surpass, the level of frivolity that generally warrants the imposition of attorneys' fees.[5]

## A. Prevailing Party and Finding of Bad Faith

First, Neroni contends, without citing any authority, that defendants are not the prevailing parties because "[l]ack of state action only means that an Article III court does not have authority to review a claim." (Dkt. No. 69 at 14-15.) The court disagrees. "[I]n order to be considered a 'prevailing party' . . . , a [party] must not only achieve some material

---

[5] For instance, citing no authority, Neroni contends that awarding attorneys' fees is inappropriate because punishment for frivolous conduct of civil rights plaintiffs contradicts the anti-majoritarian rule of the Supreme Court, violates the Supremacy Clause of the United States Constitution, and runs contrary to the congressional intent and purpose of § 1983. (Dkt. No. 69 at 9-12.) Again without citation, Neroni further argues that the court lacks authority to impose attorneys' fees "because such imposition will be an unconstitutional viewpoint discrimination not meeting strict scrutiny." (*Id.* at 13-14.) Finally, despite the fact that defendants have not filed a Rule 11 motion, Neroni raises several arguments concerning the court's authority to impose sanctions pursuant to Rule 11. (*Id.* at 15-17.) The court has considered, and rejects, each of Neroni's arguments.

5

alteration of the legal relationship of the parties, but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (internal quotation marks omitted). Here, the court granted defendants' motions to dismiss, and defendants then became the prevailing parties. *See Tornheim v. Eason,* 363 F. Supp. 2d 674, 678 (S.D.N.Y. 2005) (awarding attorneys' fees to defendants after defendants prevailed on motion to dismiss), *aff'd* 175 F. App'x 427 (2d Cir. 2006).

Second, in an attempt to convince the court that his claims were neither frivolous nor brought in bad faith, Neroni again argues the merits of his claims. (Dkt. No. 69 at 1-9.) The court, however, declines to further entertain these contentions. The court has already concluded that the complaint was "frivolous, baseless, and vexatious." (Dkt. No. 59 at 36.) Further, defendants point out, and the court agrees, that Neroni, a former attorney, had no plausible basis for joining private law firms and a private attorney to federal civil rights litigation pursuant to 42 U.S.C. § 1983, as it was clear that there was no state action. (Dkt. No. 29, Attach. 2 at 12; Dkt. No. 30, Attach. 3 at 18.)

Moreover, Neroni's history of filing meritless lawsuits in this District further elucidates his bad faith. Indeed, in addition to this case, Neroni has

6

filed four other lawsuits, many of which involve similar factual backgrounds. All of these lawsuits have been dismissed, at least in part, and in many of these cases, the court noted that Neroni's claims were baseless.[6] Additionally, in *Neroni v. Becker*, No. 3:12-cv-1226, 2013 WL 5126004, at *3 (N.D.N.Y. Sept. 12, 2013), this court granted defendants' motion for costs and attorneys' fees, and noted that it agreed that the "'action, and the arguments adduced in opposition to [d]efendants' [m]otion to [d]ismiss, were baseless, without foundation, and vexatious.'" *See Davey v. Dolan*, 292 F. App'x 127, 128 (2d Cir. 2008) (noting that sanctions were appropriate "because plaintiff, having adequately been warned of the possibility of sanctions, has nonetheless repeatedly pursued meritless

---

[6] *See Neroni v. Zayas*, No. 3:13-CV-0127, 2014 WL 1311560, at *1, *12 (N.D.N.Y. Mar. 31, 2014) (dismissing, in part, Neroni's complaint alleging "various constitutional violations related to his disbarment"); *Neroni v. Grannis*, No. 3:11-CV-1485, 2013 WL 1183075, at *1, *14-15 (N.D.N.Y. Mar. 21, 2013) (dismissing action against "a number of New York State officials" regarding the legality of a pond constructed on the Neronis' property, noting that the factual allegations upon which the complaint was based were "lengthy and convoluted," and describing the claims as "lacking in legal merit as well as being improperly brought," "legally deficient," and "conclusory and unsupported by any facts on the record"); *Bracci v. Becker*, No. 1:11-cv-1473, 2013 WL 123810, at *1, *30-31 (N.D.N.Y. Jan. 9, 2013) (dismissing action brought against three New York state judges and the state of New York, based on "a continuous and vicious pattern of retaliation by an obviously disqualified judge against an attorney and her clients and family members," and noting that the action was "frivolous and groundless" and that many of the plaintiffs' assertions were "baseless" (internal quotation marks and citations omitted)), *aff'd* 2014 WL 2210761 (2d Cir. May 29, 2014); *Neroni v. Becker*, No. 3:12-cv-1226, 2012 WL 6681204, at *1, *4 (N.D.N.Y. Dec. 21, 2012) (dismissing action "predicated on purported personal vendettas, judicial improprieties, and the unconstitutional application of New York statutes in an underlying civil action in which Neroni is presently a defendant" filed against a state Supreme Court justice and the state of New York), *aff'd in part, vacated in part by* 555 F. App'x 118 (2d Cir. 2014).

7

claims despite being warned by courts at every turn to cease the bad faith litigation").

Thus, for the reasons articulated in the court's June 5, 2014 Memorandum-Decision and Order, and because Neroni's submissions throughout this litigation have been rife with conjecture, irrelevant personal accusations, and baseless legal arguments,[7] the court finds that Neroni brought and pursued this action in bad faith. *See United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000) ("When a district court invokes its inherent power to impose attorney's fees . . . [it] must make an explicit finding of bad faith.").

## B. Reasonableness of the Fees

Next, Neroni also attacks the reasonableness of the fees requested. (Dkt. No. 69 at 18-24; Dkt. No. 71 at 2-11.) Among other things, Neroni contends that both law firms inflated their legal fees because "the amount

---

[7] While by no means exhaustive, Neroni's treatment of sovereign immunity highlights the bad faith with which he has continued to litigate cases. To the court's knowledge, in three separate actions in this District, Neroni has erroneously argued that the Eleventh Amendment does not bar claims of citizens against their own states; in each of those cases, that argument was rejected in favor of well-established legal principles espoused by the Supreme Court over a century ago. (Dkt. No. 59 at 26 n.16); *see Bracci*, 2013 WL 123810, at *9 n.5; *Becker*, 2012 WL 6681204, at *3 n.9; *see also Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890). The relentlessness with which Neroni continues to raise this spurious legal argument demonstrates his utter disregard for both the court's resources and century-old jurisprudence.

of legal work claimed by . . . HHK [and] LGT . . . was simply unnecessary."[8] (Dkt. No. 69 at 18.)  Again, the court disagrees.

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). There is a "strong presumption" that the lodestar represents the appropriate award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).  The party seeking fees "must provide the [c]ourt with sufficient information to determine if the fee assessed is reasonable.*" Cordero v. Collection Co.*, No. 10 CV 5960, 2012 WL 1118210, at *3 (E.D.N.Y. Apr. 3,

---

[8] For example, citing no authority, Neroni contends that neither law firm may claim attorneys' fees for time expended on the case prior to the date that counsel officially appeared in the action, or for time spent reviewing documents pertaining to or submitted by other parties, or for time spent discussing the case with other parties. (Dkt. No. 69 at 23-24; Dkt. No. 71 at 3-7, 10-11.)  These arguments are meritless.  First, courts routinely award attorneys' fees that are incurred from the commencement of the action through the preparation of a § 1988 motion. *See Firetree, Ltd. v. Town of Colonie*, No. 1:11-cv-95, 2012 WL 5880663, at *2 (N.D.N.Y. Nov. 21, 2012) (citing *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (stating that the cost of preparing a section 1988 motion "should be granted whenever underlying costs are allowed" (internal quotation marks and citation omitted))); *Mastrio ex rel. Prendergast v. Sebelius*, No. 3:08 CV 1148,  2011 WL 5078240, at *13 (D. Conn. Oct. 26, 2011) (awarding fees "from the commencement of th[e] action until the case was . . . 'settle[d],'" and also including reasonable fees incurred by counsel for the preparation of their motion for attorneys' fees).  Second, in considering the number of reasonably expended hours, the court should consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citations omitted).  Here, the hours billed for time spent reviewing other parties' submissions and time spent discussing the case and strategizing with other parties are reasonable time expenditures.

2012).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).  In determining whether an attorney's requested hourly rate is reasonable, the court should consider what "a reasonable, paying client would be willing to pay," which varies by practice area and location.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184, 192 (2d Cir. 2008).

Here, LGT seeks fees in the amount of $5,967.50, for a total of 34.1 hours expended, at an hourly rate of $175, and HHK seeks fees in the amount of $10,502, for a total of 35.6 hours expended, at an hourly rate of $295.  (Dkt. No. 62, Attach. 1 at 2; Dkt. No. 63, Attach. 1 at 2.)  Neroni notes the disparity among the fees requested, states that, because HHK "incorporated" the arguments adduced in LGT's memorandum of law, the "two firms cannot claim the same legal fee twice for the same work done by one of the firms," and argues that HHK's fees should be less, not more, than LGT's.  (Dkt. No. 71 at 2.)  After reviewing the time and billing records submitted by both LGT and HHK, however, it is clear that the attorneys for

each party spent a similar amount of time on this matter: LGT spent 34.1 hours, and HHK's time records reflect a total of 35.6 hours expended. (Dkt. No. 62, Attach. 1 at 2; Dkt. No. 63, Attach. 1 at 2.) Further, Neroni completely ignores that LGT's fees are lower than HHK's because Robert Barrer—counsel for LGT, and a partner at the Hiscock & Barclay law firm—accepted an hourly rate of $175, "far below [his] standard commercial rate," while James Gleason—counsel for, and a partner at, HHK—charged his customary hourly rate during 2013.[9] (Dkt. No. 62, Attach. 1 at 2; Dkt. No. 63, Attach. 1 at 2.)

As far as the reasonableness of the hourly rates requested by the parties, the prevailing hourly rates in this District can reach up to $345 for the most experienced attorneys. *See, e.g., Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2014 WL 1239030, at *7 (N.D.N.Y. Mar. 25, 2014) (awarding fees of $300 per hour for work performed by partners in action brought pursuant to, *inter alia*, the Petroleum Marketing Practices

---

[9] Neroni also raises objections, (Dkt. No. 71 at 2, 9), to the time expended by a new associate at HHK, Michael Keenan, who was not admitted to practice when he performed the relevant work on this matter, (Dkt. No. 63, Attach. 1 at 2). HHK, however, has explicitly stated that it does not seek to recover the fees for Keenan's efforts, which totaled 39.3 hours. (*Id.*) After reviewing the time records submitted by HHK, it is clear that HHK does not in fact seek to recover those costs, but instead requests only the costs incurred by Gleason's attention to this matter, which, in some instances, includes meetings with Keenan and review of Keenan's work. (Dkt. No. 63, Attach. 1 at 5-12.) Neroni's arguments are therefore rejected.

11

Act, 15 U.S.C. § 2805); *Aquent, LLC v. Atl. Energy Servs., Inc.*, No. 1:09-CV-0524, 2012 WL 1005082, at *3 (N.D.N.Y. Mar. 23, 2012) (applying rates of $135 to $345 per hour for attorneys); *Broadcast Music, Inc. v. DFK Entm't, LLC*, No. 1:10-cv-1393, 2012 WL 893470, at *7 (N.D.N.Y. Mar. 15, 2012) (applying a rate of $270 per hour for a partner). Moreover, the Second Circuit explicitly stated that "recent surveys in Northern District cases have indicated that, for a civil rights matter, [attorneys' fee rates] are higher than $210 [per hour]." *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012). Thus, HHK and LGT's hourly rates fit within the prevailing rates in this District.

Accordingly, the court finds the requested hourly rate and time expended by HHK's attorney, James Gleason, and LGT's counsel, Robert Barrer, to be reasonable, and the time records provided by them to be sufficiently detailed. As such, Neroni is liable for defendants' costs and attorneys' fees totaling $10,502 to HHK and $5,967.50 to LGT.

## VI. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions for costs and attorneys' fees (Dkt. Nos. 62, 63) are **GRANTED**; and it is further;

**ORDERED** that Neroni is liable for defendants' costs and attorneys' fees totaling $10,502 to HHK and $5,967.50 to LGT; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 6, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court